```
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


Thomas Paul Lovy and
Loan Anh Quoc Lovy,
     Plaintiff

     v.                                Case No. 13-cv-399-SM
                                       Opinion No. 2014 DNH 081
Federal National Mortgage Ass'n;
Seterus, Inc.; Mortgage Electronic
Registration Systems, Inc.; and
Bank of America Corporation,
     Defendants
```

**O R D E R**

Pro se plaintiffs, Thomas Lovy and his wife Loan Anh Quoc Lovy, initiated this action by filing a 76-page, 440 paragraph complaint against defendants in the Rockingham County Superior Court. Invoking this court's diversity jurisdiction, Bank of America Corporation (with the assent of the three other named defendants) removed the case.

Pending before the court are: (1) plaintiffs' motion to remand; (2) Bank of America's motion to dismiss; and (3) a motion to dismiss filed by the remaining three defendants (Federal National Mortgage Association ("Fannie Mae"), Mortgage Electronic Registration Systems ("MERS"), and Seterus, Inc.). For the reasons discussed, plaintiffs' motion to remand is denied, and defendants' motions to dismiss are granted.

Parenthetically, the court notes that Bank of America Corporation says it is not a proper defendant in this action. It is simply the holding company of the various Bank of America entities and claims to have no relationship with plaintiffs or any ties to their loan or mortgage. It suggests that plaintiffs likely intended to sue Bank of America, N.A., which is the successor-in-interest to Countrywide Bank, FSB - the original holder of plaintiffs' promissory note. Nevertheless, Bank of America Corporation has appeared and filed its pending motion to dismiss on behalf of all of the Bank of America entities.

**Standard of Review**

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010). Although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the essential elements of a viable cause of action and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal punctuation omitted).

In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Instead, the facts alleged in the complaint must, if credited as true, be sufficient to "nudge[] [plaintiff's] claims across the line from conceivable to plausible." Id. at 570. If, however, the "factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Tambone, 597 F.3d at 442.

Here, in support of their motions to dismiss, defendants rely upon various documents that are referenced in the complaint, attached to the complaint, and/or recorded in the Rockingham County Registry of Deeds. Those documents include plaintiffs' mortgage deed, the promissory note it secures, the loan modification agreement plaintiffs' executed, and various orders of the Rockingham County Superior Court. While a court must typically decide a motion to dismiss solely upon the allegations set forth in the complaint (and any documents attached to it), see Fed. R. Civ. P. 12(d), there is an exception to that general rule:

> [C]ourts have made narrow exceptions for documents the authenticity of which [is] not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.

Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (citations omitted).  See also Trans-Spec Truck Serv. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008); Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).  The court may, then, consider the documents referenced both in the complaint and the defendants' memoranda, without converting defendants' motions into ones for summary judgment.

**Background**

Accepting the non-conclusory factual allegations in plaintiffs' complaint as true, and in light of the various documents referenced by the parties, the relevant facts are as follows.  In September of 2007, plaintiffs refinanced their home located in Londonderry, New Hampshire.  They executed a promissory note in the amount of $240,350.00 in favor of Countrywide Bank, FSB.  As security for that loan, the plaintiffs gave a mortgage deed to their property to MERS, as nominee for the lender and its successors and assigns.

Subsequently, plaintiffs apparently experienced financial difficulties and defaulted on their obligations under the

promissory note. In November of 2010, the servicer of plaintiffs' loan offered to modify the loan's terms, to reduce their monthly repayment obligations. Plaintiffs' accepted that offer and executed a "Loan Modification Agreement," thereby avoiding foreclosure. At that time, MERS assigned the mortgage to Fannie Mae and servicing of the loan was transferred to Seterus.[1]

In or around 2013, plaintiffs again failed to meet their repayment obligations. Accordingly, Seterus retained a law firm to bring a foreclosure action in the name of the mortgage holder, Fannie Mae. On August 1, 2013, plaintiffs filed this action in state court, in an effort to enjoin the foreclosure. Their request for injunctive relief was denied. And, on August 16, 2013, a foreclosure auction was conducted, at which plaintiffs' property was sold (apparently to Fannie Mae, as the highest bidder). Defendants then removed the action from state court to this forum.

---

[1] The Court of Appeals for the First Circuit recently explained, in some detail, MERS' origins and its role in the national mortgage market. See Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282 (1st Cir. 2013). The court also "unequivocally ruled that MERS may validly possess and assign a legal interest in a mortgage." Serra v. Quantum Servicing, Corp.,__ F.3d __, 2014 WL 1280260 (1st Cir. March 31, 2014) (citing Culhane, supra). Consequently, plaintiffs' assertions to the contrary are without legal merit.

**Discussion**

I. <u>Removal was Proper</u>.

Plaintiffs move to remand this proceeding to state court on grounds that Fannie Mae, Seterus, and MERS "failed to properly join in the Notice of Removal in a timely manner." Plaintiffs' Motion to Remand (document no. 5) at 2. And, although they are pro se, they also seek an award of "$2,975.00 as reasonable fees incurred in filing [their] motion." <u>Id</u>. at 7. That motion is necessarily denied.

On September 6, 2013, Bank of America filed a timely notice of removal (document no. 1). In it, counsel for Bank of America represented that "Fannie Mae, Seterus, and MERS have expressly consented by and through counsel to removal, in accordance with 28 U.S.C. § 1446." <u>Id</u>. at para. 16. Plaintiffs assert that counsel's representation about the unanimous agreement of the defendants to removal is insufficient to meet the "unanimity" requirement of 28 U.S.C. § 1446. Indeed, say plaintiffs, counsel for Bank of America actually violated Rule 11 of the Federal Rules of Civil Procedure by purporting to make representations on behalf of defendants who are represented by other counsel. Plaintiffs are mistaken.

Counsel's representation that all defendants were surveyed and assented to removal is sufficient to meet the unanimity requirement of 28 U.S.C. § 1446.  See Samaan v. St. Joseph Hosp., 670 F.3d 21, 28 (1st Cir. 2012).  And, to the extent there was any lack of clarity on that issue (there was not), defendants made their positions abundantly clear when each of them objected to plaintiffs' motion to remand.  See Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 77 (1st Cir. 2009).  Nothing more was required for the matter to have been properly removed from state court.  Plaintiffs' belief that the notice of removal was deficient, as well as their assertion that counsel for Bank of America somehow violated provisions of Rule 11, are simply incorrect.

## II. Defendants' Motions to Dismiss.

In their lengthy complaint, plaintiffs attempt to advance fourteen claims:

Count 1:  Injunctive Relief (all defendants)

Count 2:  Declaratory Relief (Fannie Mae)

Count 3:  Conversion (Fannie Mae, Seterus, Bank of America)

Count 4:  Breach of Contract (Bank of America)

Count 5:  Slander of Title (Fannie Mae, Seterus)

Count 6:  Fraud (Bank of America)

Count 7:  Fraudulent Concealment (Bank of America)

```
Count 8:   Fair Debt Collection Practices Act
           (Fannie Mae, Seterus, Bank of America)

Count 9:   Breach of Covenant of Good Faith & Fair Dealing
           (Bank of America)

Count 10:  Negligent Misrepresentation (Fannie Mae, Seterus)

Count 11:  Mail Fraud (Fannie Mae, Seterus, Bank of America)

Count 12:  Unjust Enrichment (Fannie Mae, Seterus)

Count 13:  Successor and Vicarious Liability
           (Bank of America)

Count 14:  Equitable Relief (Fannie Mae, Seterus)
```

A.  <u>Non-Viable Claims</u>.

It is, perhaps, best to begin with those "counts" in plaintiffs' complaint that simply are not viable causes of action. As to their claim that defendants are liable to them for criminal "mail fraud" (count 11), plaintiffs do not have standing to assert a civil claim under the federal criminal mail fraud statute; there is no private civil right of action under that criminal statute. <u>See, e.g.</u>, <u>Napper v. Anderson, Henley, Shields, Bradford and Pritchard</u>, 500 F.2d 634, 636 (5th Cir. 1974); <u>Ryan v. Ohio Edison Co.</u>, 611 F.2d 1170, 1178-79 (6th Cir. 1979); <u>Wisdom v. First Midwest Bank of Poplar Bluff</u>, 167 F.3d 402, 408 (8th Cir. 1999). And, their claims for "successor and vicarious liability" (count 13) and "equitable relief" (count 14) are not themselves causes of action. The former is a theory of liability, while the latter is a broad category of relief that is

typically available in the absence of adequate remedies at law.[2] Those three counts are, therefore, subject to dismissal.

As to plaintiffs' remaining claims, many were raised in a factually similar case that recently came before the Court of Appeals for the First Circuit. The court addressed those issues, resolved them in a manner unfavorable to plaintiffs, and affirmed the district court's dismissal of those claims for failure to state a cause of action. See Butler v. Deutsche Bank Trust Co., __ F.3d __, 2014 WL 1328296 (1st Cir. April 4, 2014) (discussing claims that a defendant lacked proper authority to foreclose, improperly assigned a mortgage, conducted a "wrongful foreclosure," engaged in unfair and deceptive trade practices, and slandered the mortgagor's title). In light of the Butler decision, only a brief discussion of the claims advanced in this case is warranted.

B. Conversion (Count Three).

As this court (DiClerico, J.) recently noted, a common law claim for conversion arises "from the defendant's intentional exercise of unauthorized dominion or control over the plaintiff's property that seriously interferes with the plaintiff's right to

---

[2] To the extent plaintiffs seek the specific equitable remedies of declaratory and injunctive relief, count fourteen is duplicative of counts one and two.

the property." Askenaizer v. Moate, 406 B.R. 444, 452 (D.N.H. 2009).  Here, in support of their conversion claims, plaintiffs assert that:

> [T]hese Defendants had and have no legal right to be demanding such payments from Plaintiff[s] for any loan, promissory note or loan modification [at] issue herein because these Defendants are not the holder in due course or owner of the promissory note in question.
>
> Further, Defendants are not the authorized representative or agent for the holder in due course or owner of the promissory note in question.
>
> Defendants converted Plaintiffs' asset to their own use.

Complaint at paras. 272-74.  But, the undisputed documents of record demonstrate otherwise.  Plaintiffs executed the promissory note in favor of Countrywide Bank, FSB.  That entity then endorsed the note to Countrywide Home Loans, Inc., which subsequently endorsed the note in blank (making it bearer paper). See Promissory Note (document no. 7-3).  And, as security for that promissory note, plaintiffs gave a mortgage deed to MERS, as nominee for Countrywide.  Subsequently, MERS assigned that mortgage to Fannie Mae.  See Mortgage Deed (document no. 7-2) and Assignment of Mortgage (document no. 9-3).  On the same day the mortgage was assigned to Fannie Mae, plaintiffs executed the Loan Modification Agreement (document no. 9-4).

10

Taken in light of the documents plaintiffs acknowledge executing (i.e., the promissory note, mortgage deed, and loan modification agreement), the allegations in their complaint are insufficient to give rise to a plausible claim that defendants lacked the legal right to either demand payment under the note (as modified), or to exercise the power of sale provision of the mortgage deed. See generally Iqbal, 556 U.S. at 678.

C. Breach of Contract (Count Four).

A breach of contract occurs "when there is a failure without legal excuse, to perform any promise which forms the whole or part of a contract." Bronstein v. GZA GeoEnvironmental, Inc., 140 N.H. 253, 255 (1995) (citation and internal punctuation omitted). The allegations in plaintiffs' complaint relating to their breach of contract claim fail to state a viable cause of action. Instead, plaintiffs make claims that are belied by the very documents on which they rely and seem to be based upon a misapprehension of contract law. For example, while plaintiffs do not deny having received more than $240,000 from Countrywide, they claim the promissory note was not supported by any consideration. Complaint, at para. 286. Other claims, while difficult to discern, are undeniably conclusory and unsupportive of a cause of action for breach of contract. See, e.g., Id. at para. 292 ("[Countrywide], in concert with its Co-Conspirators,

11

have engaged in the banking industry's long time practice of "constructive fraud" by breach of contract, nondisclosure of material facts, and larceny.").

    D.    <u>Slander of Title (Count Five)</u>.

The fifth count in plaintiffs' complaint appears to be based upon plaintiffs' mistaken impression that "Seterus or [Fannie Mae] have no legally enforceable claim, interest or standing to sue as to the Note or Mortgage." Complaint, at para. 299. They seem to complain that by recording the mortgage deed to plaintiffs' property, defendants unlawfully created a false cloud on their title. <u>See</u> <u>Id</u>. at para. 303. But, of course, MERS was entitled to record plaintiffs' mortgage deed under New Hampshire law and had no other practical means of securing payment of the note evidencing the loan. <u>Cf</u>. <u>Butler</u>, <u>supra</u>. Consequently, plaintiffs have failed to adequately allege that any of the named defendants intentionally and maliciously created a false cloud on their title. <u>See generally</u> <u>Wilko of Nashua, Inc. v. TAP Realty, Inc.</u>, 117 N.H. 843, 848-49 (1977).

    E.    <u>Fraud (Counts Six and Seven)</u>.

Next, plaintiffs advance claims for fraud (count six) and fraudulent concealment (count seven) against Bank of America. Some of their factual allegations in support of those claims are

difficult to decipher.  <u>See, e.g.</u>, Complaint, at para. 89 ("[Countrywide] committed fraud as they used the Plaintiffs' Promissory Note to obtain funds from the Fed, while simultaneously being paid for said Promissory Note by the [mortgage backed security] Trust."); para. 126 ("The asset of the REMIC was registered and traded as a part of a security and as such cannot be traded out and is permanently attached and converted into stock preventing the Note from being assigned and securitized again and again which would create securities fraud.").  Others are legally incorrect.  <u>See</u> <u>Id</u>. at para. 131 ("The attempt by [Fannie Mae] to claim ownership of the original Promissory Note by the purchaser of the discharged asset is fraudulent and characterized as "reverse engineering.").

The point need not be repeated.  It is sufficient to note that plaintiffs' claims sounding in fraud do not meet the pleading requirements of Rule 9(b) and fail to state viable causes of action.  <u>See</u> Fed. R. Civ. P. 9(b).  <u>See generally</u> <u>Alexander v. Fujitsu Bus. Communications Sys., Inc.</u>, 818 F. Supp. 462, 467 (D.N.H. 1993).

F.  Fair Debt Collection Practices Act (Count Eight).

Next, plaintiffs assert that Fannie Mae, Seterus, and Bank of America violated aspects of the Fair Debt Collection Practices Act, 15 U.S.C. § 1962 et seq. Again, however, plaintiffs' claims appear to be based upon a mistaken interpretation of the law. See, e.g., Complaint, at para. 373 ("Seterus and/or legal counsel on its behalf as a result of the allegations alleged in this verified complaint has violated the FDCPA by use of false representations and deceptive means in pursuing Plaintiff for payment of a debt given that the basis of [Fannie Mae's] ability to collect was a mortgage lien that was void ab initio and unenforceable."). The legal premise of that argument - that the mortgage was "void ab initio" and "unenforceable" - is unsupported by the record documents or the factual allegations (as opposed to legal conclusions) set forth in plaintiffs' complaint. So, too, are many other legal conclusions set forth in plaintiffs' complaint. See, e.g., Id. at para. 375 ("Seterus and/or legal counsel on its behalf has violated FDCPA by falsely representing the character or amount or legal status of the debt."); para. 376 ("Seterus and/or legal counsel on its behalf has violated FDCPA by collecting amounts not permitted by law").

In short, plaintiffs' complaint fails to contain a short and plain statement of facts which, if credited as being true, would

14

give rise to a viable claim that one or more named defendants violated the Fair Debt Collection Practices Act.

    G.   <u>Covenant of Good Faith & Fair Dealing (Count Nine)</u>.

In count nine of their complaint, plaintiffs allege that Bank of America violated the covenant of good faith and fair dealing that is implicit in all New Hampshire contracts. Under New Hampshire law:

> There is not merely one rule of implied good faith duty in New Hampshire's law of contract, but a series of doctrines, each of them speaking in terms of an obligation of good faith but serving markedly different functions. The various implied good-faith obligations fall into three general categories: (1) contract formation; (2) termination of at-will employment agreements; and (3) limitation of discretion in contractual performance.

<u>J & M Lumber and Constr. Co. v. Smyjunas</u>, 161 N.H. 714, 724 (2011) (citations and internal punctuation omitted). Here, plaintiffs' claims appear to fall into the "contract formation" category:

> The Defendants have breached that covenant of good faith and fair dealing by intentionally and/or negligently misrepresenting or omitting to disclose material facts that would have been pertinent to Plaintiffs' <u>decision to enter</u> into transactions with the Defendants.

Complaint, at para. 383 (emphasis supplied).

15

As to that category of claims, the New Hampshire Supreme Court has said:

> In our decisions setting standards of conduct in contract formation, the implied good faith obligations of a contracting party are tantamount to the traditional duties of care to <u>refrain from misrepresentation and to correct subsequently discovered error</u>, insofar as any representation is intended to induce, and is material to, another party's decision to enter into a contract in justifiable reliance upon it.

<u>Centronics Corp. v. Genicom Corp.</u>, 132 N.H. 133, 139 (1989) (emphasis supplied) (citations omitted). Here, however, it is entirely unclear what material misrepresentation(s) were made to induce plaintiffs to accept the loan from Countrywide and execute the promissory note and mortgage deed (or the subsequent loan modification agreement). Plaintiffs simply allege that:

> As a consequence of the breaches of the covenant of good faith and fair dealing by the Defendants, the Plaintiff[s have] been deprived of the right to receive the benefit under those loan agreements, to-wit: they have been stripped of the value and equity in their home as a consequence.

Complaint, at para. 384. But, plaintiffs do not deny receiving $240,350.00 from Countrywide in exchange for their promissory note. And, it is undisputed that they defaulted on their repayment obligations under both the original note and, later, the loan modification agreement. It is, therefore, entirely

unclear what "benefit under those loan agreements" plaintiffs believe they were denied (or about which they were misled).

The material facts in this case appear to be quite straightforward: plaintiffs borrowed approximately $240,000 from Countrywide; they failed to meet their repayment obligations under the promissory note; they were offered, and accepted, a loan modification agreement; they defaulted again and the lender foreclosed on the mortgage deed. Nothing in the complaint suggests there is a plausible claim that any defendant made a material misrepresentation to plaintiffs that induced them to borrow money from Countrywide. Consequently, count nine of plaintiffs' complaint fails to set forth the factual predicate for a viable claim that any defendant breached the implied covenant of good faith and fair dealing.

    H.   <u>Negligent Misrepresentation (Count Ten)</u>.

In count ten of their complaint, plaintiffs allege that Fannie Mae and Seterus are liable for having made negligent, material misrepresentations.

> Because Plaintiff relied upon the Defendants to guide him through the process of making and later servicing his alleged home mortgage loan, a special relationship exists between Plaintiff and the Defendants.
>
> The existence of that special relationship imposed upon the Defendants a duty to fully and accurately disclose

> all pertinent information pertaining to the alleged home loan to the Plaintiff, including but not limited to, true and correct information pertaining to the securitization of Plaintiff's note, the existence of credit default swaps (CDS), and the fact that the Defendants have no legal right to foreclose upon Plaintiff's mortgage once the promissory note became the basis for MBS pools.

Complaint, at paras. 389-90. Plaintiffs are mistaken. None of the defendants was obligated to make such disclosures prior to plaintiffs' execution of the promissory note, mortgage deed, or even the loan modification agreement.

    I.    <u>Unjust Enrichment (Count 12)</u>.

Finally, plaintiffs advance a claim for unjust enrichment against all defendants. Specifically, they allege:

> [Plaintiffs' lender] received a benefit of $240,350.00 from Plaintiff's promissory note.
>
> [The lender] accepted the promissory note.
>
> [The lender] cashed the promissory note and retained Plaintiffs' money.
>
> It would be unjust for [the lender] to keep Plaintiffs' $240,350.00 money without compensating Plaintiff.
>
> Acceptance of such benefit under such circumstances would be inequitable for [the lender] to retain the benefit without payment of value thereof.
>
> Defendants are jointly and severally liable for the $240,350.00.

Complaint, at paras. 410-15.

Unjust enrichment is an equitable remedy, available when an individual "has received a benefit which would be unconscionable for him to retain." Kowalski v. Cedars of Portsmouth Condo. Ass'n, 146 N.H. 130, 133 (2001). It is, however, quite limited in its application.

> One general limitation is that unjust enrichment shall not supplant the terms of an agreement. See 42 C.J.S. Implied Contracts § 38 (2007) ("[U]njust enrichment . . . is not a means for shifting the risk one has assumed under contract."). It is a well-established principle that the court ordinarily cannot allow recovery under a theory of unjust enrichment where there is a valid, express contract covering the subject matter at hand.

Clapp v. Goffstown School Dist., 159 N.H. 206, 210-11 (2009). Here, the factual allegations set forth in plaintiffs' complaint fail to state a viable claim for unjust enrichment. Moreover, the parties' relationship (and various rights and obligations) are governed by their written agreements. Consequently, if plaintiffs' had any viable claim to the "return" of roughly $240,000 they borrowed from, but failed to repay to, Countrywide (and they do not), those claims would likely sound in contract, rather than equity.

J.   <u>Injunctive and Declaratory Relief (Counts One and Two)</u>.

In light of the foregoing, plaintiffs' requests for injunctive relief (count one) and declaratory relief (count two) are denied.

## Conclusion

For the foregoing reasons, as well as those set forth in defendants' memoranda, plaintiffs' motion to remand (document no. 5) is denied.  Defendants' motions to dismiss (documents no. 7 and 9) are granted.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

April 28, 2014

cc:   Thomas P. Lovy, pro se
      Loan A. Q. Lovy, pro se
      Andrea Lasker, Esq.
      Jennifer T. Beaudet, Esq.
      Thomas J. Pappas, Esq.